UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

KIMBERLY L. R.[1],                    )
                                      )
            Plaintiff,                )
                                      )
      v.                              ) Case No.: 4:19-cv-00222-SEB-DML
                                      )
ANDREW M. SAUL,                       )
Commissioner of the Social Security,  )
Administration,                       )
                                      )
            Defendant.                )

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition.  As addressed below, the Magistrate Judge recommends that the District Judge REVERSE and REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Kimberly R. was not disabled.

## Introduction

Kimberly applied in 2013 for Disability Insurance Benefits under Title II of the Social Security Act, alleging that she had been disabled since January 1, 2013. Her last date insured for purposes of Title II was December 31, 2016.  She was denied benefits after a final decision issued in 2015. After seeking judicial review,

---

[1]      To protect privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.  The plaintiff will therefore be referred to by her first name in this Report and Recommendation.

the Commissioner agreed that reversal and remand for further proceedings was appropriate, and the district court ordered that relief.  The Appeals Council then remanded the matter to administrative law judge Kristen King, who had conducted the first hearing, and she held a new hearing on May 8, 2019.  The ALJ issued a decision dated July 28, 2019, that Kimberly was not disabled at any time between her alleged onset date and her date last insured.  The ALJ's decision became the final decision of the Commissioner under 20 C.F.R. § 404.984(d) without further action by the Appeals Council.  (The regulation addresses circumstances under which an ALJ's decision becomes the final decision after remand by a federal court without the claimant seeking further review by the Appeals Council.)   Kimberly timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Kimberly argues that the ALJ's determination about her residual functional capacity is not supported by substantial evidence because the ALJ (1) made a patently wrong credibility determination and (2) failed to accommodate properly her difficulties with concentration, persistence, or pace, and with interacting with others.  She also argues that even if the RFC is appropriately supported, the court must reverse and remand because the conclusion that a person with Kimberly's right upper extremity deficits can perform the jobs the ALJ found were available to her is not supported by substantial evidence.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Kimberly's assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Kimberly is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the

Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential.  A court must affirm if no error of law occurred and if the findings are supported by substantial evidence.  *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001).  Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion.  *Id.*  The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).  The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions.  *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

Before addressing Kimberly's specific assertions of error, the court will describe her work history and the ALJ's sequential findings and then address some of the evidence about Kimberly's impairments and treatment.

## I.    Kimberly most recently worked as a retail store manager.

Kimberly was born in 1972, was 40 years old at the alleged onset of her disability in January 2013, and was 44 years old as of her date last insured of

December 31, 2016. Kimberly's onset date generally corresponds to a period when a cervical spine impairment, for which she underwent surgery in February 2011, had worsened and caused seemingly intractable pain and weakness from the neck down through Kimberly's right upper extremity. Kimberly had worked from about February 1995 to August 2011 as a manager at a Famous Footwear retail store; she had been released to return to work in May 2011 after her surgery and stopped working when the store closed in August.

## II.    **The ALJ determined at step five that Kimberly was not disabled.**

At step one, the ALJ found that Kimberly had not engaged in substantial gainful activity between her alleged onset date in January 2013 and her date last insured of December 31, 2016. (She also had not been employed at any time thereafter.) At step two, she determined that Kimberly's severe impairments were degenerative disc disease and degenerative joint disease "status post cervical discectomy with fusion," hypertension with history of chronic heart failure,[2] obesity, depression, and generalized anxiety disorder. She found no listings were met or medically equaled at step three. Kimberly does not challenge the ALJ's decisions at steps one through three.

For the RFC, the ALJ decided that Kimberly is capable of light work as defined at 20 C.F.R. § 404.1567(b)—meaning she can lift no more than 20 pounds at a time, frequently lift and carry objects that weigh up to 10 pounds, and engage in a

---

[2]    Kimberly had suffered heart failure-related complications after giving birth to one of her children. That condition improved substantially, and she does not contend that the ALJ did not properly analyze that impairment or its effects.

"good deal of walking or standing," generally understood as a capability to walk and/or stand at least six hours in a work day—but must observe certain postural limits (only occasional climbing ramps and stairs, balancing, stooping, kneeling, and crouching; never climbing ladders, ropes or scaffolds; never crawling.) She found that Kimberly is restricted in handling/fingering abilities, determining that she can only occasionally handle objects, finger and feel with the right upper extremity, but can constantly handle objects, finger, and feel with the left upper extremity. The ALJ's decision does not acknowledge anywhere, however, that Kimberly is right handed. The RFC also includes restrictions against the use of dangerous machinery and limits Kimberly to "simple, routine tasks" and "jobs in which changes occur no more than 15% of the workday." (R. 575).

Based on the RFC and the testimony of a vocational expert, the ALJ found at step four that Kimberly could not perform her past relevant work as a retail store manager, a skilled job with a Specific Vocational Profile of 7. (A job with an SPV of 4 or above is "skilled" under Agency rules.) At step five, based on Kimberly's RFC and vocational factors and the VE's opinion, the ALJ decided that Kimberly had been capable between her alleged disability onset in 2013 and her date last insured in 2016 of performing the following jobs that existed in significant numbers in the national economy: Merchandise Marker, Cleaner/Housekeeper, Office Helper, Ticket Taker, and Rental Clerk. Accordingly, the ALJ concluded that Kimberly had not been disabled. (R. 584).

III.  **The ALJ found that Kimberly's restrictions stem primarily from her physical impairments and their effects.**

Kimberly's contentions about how the ALJ erred focus on (1) the lack of restrictions in the RFC related to mental functioning beyond the simple, routine work with few changes that the ALJ included and (2) the incongruence of the jobs the ALJ decided she can perform with the RFC's restrictions on the right side for handling, fingering, and feeling abilities. The court first provides a summary of Kimberly's treatment and then addresses her assertions of error.

The medical evidence in the record mostly concerns evaluation and treatment (including surgery, physical therapy, injections, nerve blocks, and medication) for neck and back impairments.  Kimberly underwent a cervical discectomy and fusion at C5-6 in March 2011, but pain and weakness were not resolved.  Examinations over time revealed limited neck extension and range of motion, constant pain from the neck down through the shoulder, right arm and hand, and decreased grip strength on the right side. She periodically also complained about lower back pain, increasing in mid-2014.  An MRI in July 2014 found degenerative spondylolisthesis of L4 on L5 (meaning that the vertebra at L4 had slipped out of place onto L5), modic changes (which are bone marrow lesions that contribute to low back pain), and stenosis (narrowing of spaces within the spine, which can result in pressure on nerves passing through the spine).  (R. 578).   But, generally, her lumbosacral spine flexion and extension were normal, motor functioning was intact, and gait and coordination were normal.  (*See* R. 578-79).  Her low back pain continued into 2015 and 2016, but her physician noted that conservative treatment with physical

therapy and anti-inflammatories was appropriate before any decision on whether surgery was an appropriate treatment. (R. 579). As the ALJ noted, later records (after Kimberly's date last insured) indicated that she retained normal movement, her back pain was intermittent, and she had a normal gait. (R. 579).

Dr. Wang, who conducted a physical consultative examination in April 2013, reported his detailed findings from that exam. He concluded that physically, Kimberly's right hand gripping ability and her right upper extremity lifting, carrying, pushing, and pulling abilities are "limited some due to pain" and that she "may only [be] able to do light duty jobs" because of her heart problems, cervical spine problems, and neuropathic pain." (R. 510).

Kimberly also underwent a consultative psychological examination in April 2013 with psychologist Daniel Miller, Ph.D. Kimberly reported to Dr. Miller (as she also had reported to Dr. Wang) that she suffers from depression "due to" or "linked" to her pain levels and physical limitations. There are no records of mental health counseling, although Kimberly explained that she lost her insurance after she stopped working. She first began taking a medication for depression beginning in April 2013, as prescribed by her primary care physician, and reported in May 2013 that she was "doing better on medications." (R. 580-81; R. 515).

## IV.   **Kimberly contends the ALJ erred in three respects.**

As described at the outset, Kimberly argues that the ALJ erred in three ways. First, she contends that the RFC is not supported by substantial evidence because in formulating her RFC, the ALJ (1) made a patently wrong credibility

determination and (2) did not properly account for her difficulties with concentration, persistence, or pace, and with interacting with others. Second, she contends that even if the court finds no reversible error in the ALJ's formulation of the RFC, the ALJ's conclusion regarding jobs that she can perform despite the severe limitations with her handling, fingering, and feeling with the right upper extremity is not supported by substantial evidence.

### A. The ALJ's evaluation of the reliability of Kimberly's statements about her functioning is not patently erroneous.

Under SSR 16-3p, an ALJ is required to evaluate a claimant's subjective symptoms and their effects on her functioning in light of the relevant objective medical evidence, the consistency (or lack thereof) across time of the claimant's descriptions of her symptoms and their effects, the activities the claimant has engaged in and whether and how she may have structured her activities to minimize symptoms, and any other information—such as about medications, precipitating and aggravating factors, and treatment—that may shed light on the persuasiveness of the information the claimant provides. An ALJ's evaluation is entitled to special deference from the court unless it can be said to be "patently wrong." *Engstrand v. Colvin,* 788 F.3d 655, 660 (7th Cir. 2015). A court may find it patently wrong if the ALJ's determination is not "competently" explained, is based on reasons not supported by the record, or is otherwise factually or logically mistaken. *See id.*; *Allord v. Barnhart,* 455 F.3d 818, 821 (7th Cir. 2006).

Kimberly stated at the first hearing (in 2014) and in function reports that she typically must lie down during the day to otherwise function, cannot stand more

than 10 minutes at a time, walk for more than 20 minutes, or sit more than 20-25 minutes.  She also stated that she cannot lift even a gallon of milk and experiences significant restrictions with the use of her dominant right hand and arm.  In her testimony at the 2019 hearing, Kimberly discussed ways in which she had begun to use her left hand to compensate and the difficulties she had using her left hand.  As she contends, if the ALJ had at least credited the statements about her inability to even stand, walk, or sit for more than 20 minutes, then she cannot work.  (*See* Dkt. 9 at p. 26).  She argues that the ALJ's failure to adopt one or more of the above restrictions in evaluating her credibility constitutes reversible error because the ALJ did not fairly evaluate all of the evidence about the severity of her physical impairments and did not acknowledge her lengthy work history.

The court rejects Kimberly's arguments.  She has unfairly nitpicked through the administrative record and compared it to the ALJ's decision to find snippets of medical evidence not specifically mentioned by the ALJ, and she then faults the ALJ for allegedly discounting the severity of her physical impairments and pain because of the absence of these snippets.  But she does not point to any examinations the ALJ overlooked, and the court disagrees that the overall tenor of the ALJ's decision paints her impairments and complaints with a rosy brush.

For example, Kimberly picks out information contained in Dr. Wang's report of his consultative examination that the ALJ did not include in her lengthy narrative about Dr. Wang's physical findings and ultimate medical assessment (such as his notation of much reduced range of motion in neck extension), but she

does not acknowledge that the ALJ severely limited her right upper extremity functioning precisely because of her cervical problems and pain. She complains that the ALJ did not state that an orthopedic surgeon ultimately described the February 2011 cervical surgery as a "failed cervical fusion," but again does not acknowledge the severe limitations in functioning the ALJ included because of her neck problems. She complains about the ALJ's descriptions of her activities of daily living because, in general, the ALJ did not also acknowledge that Kimberly attempts to use her left hand for many tasks because of the difficulties with her right hand. Again, however, the ALJ included restrictions because of Kimberly's right-side difficulties. Kimberly also points to several other references in her medical records concerning her neck issues that she faults the ALJ for not including in the opinion, but it is simply not reasonable to read the ALJ's decision as insufficiently descriptive of the evidence regarding her neck and back impairments and associated pain and functional limitations. Similarly, Kimberly complains that the ALJ did not acknowledge that she takes a narcotic pain reliever—Norco—but the ALJ did mention that Kimberly takes pain medication and that she testified the medication causes dizziness and impaired thinking and concentration. (R. 575).

Finally, Kimberly complains that the ALJ erred by not mentioning her lengthy employment history, citing several cases in which the Seventh Circuit has noted that a disability claimant with a good work record is "entitled to substantial credibility." *E.g., Hill v. Colvin,* 807 F.3d 862, 868 (7th Cir. 2015). The quoted statement from *Hill,* and cases that cite *Hill* for that reason, cannot be divorced

from the context of the case. The ALJ in *Hill* had determined that the claimant's desire and efforts to continue to work despite impairments meant that the claimant could still work and was exaggerating her symptoms. The court found that analysis backward because when someone with a "good work record" stops working because they perceive their impairments to have become unbearable, it is more likely they are not exaggerating their symptoms, not less likely. *See also Stark v. Colvin,* 813 F.3d 684, 689 (7th Cir. 2016) (claimant with a good work history and "dogged efforts" to continue to work is entitled to "substantial credibility").

Kimberly did not stop working in August 2011 because of disability; she stopped working because the business closed. Moreover, Kimberly cannot cite any case in which the Seventh Circuit found a credibility determination to be faulty based solely, or even primarily, on an ALJ's failure to discuss a claimant's lengthy work record.

In summary, Kimberly's scattershot complaints about the ALJ's credibility evaluation are not persuasive. She has ignored the overall tenor of the ALJ's decision and the significant limitations on functioning that the ALJ included in her decision. The court cannot find the ALJ's analysis patently wrong.

**B. The ALJ included some accommodations for mental functioning.**

The second error raised by Kimberly is that the ALJ's restriction to "simple, routine tasks" and jobs "in which changes occur no more than 15% of the workday" does not account for her difficulties with concentration, persistence, or pace, or with socialization.

In evaluating the severity of a claimant's mental impairments for purposes of step two (deciding whether a severe impairment exists) and step three (deciding whether a claimant is presumptively disabled because of the degree of severity), an ALJ documents her characterization (on a scale of none-mild-moderate-marked-extreme) of the claimant's functioning in four broad areas: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *See* 20 C.F.R.§ 414.1520a. If the ALJ decides the claimant is at least moderately limited in any broad area, the mental impairment is deemed "severe" for purposes of step two. If the ALJ decides the claimant is *extremely* limited in any area, that degree "is incompatible with the ability to do any gainful activity." *Id.,* § 414.1520a(c)(4). And if the claimant is *markedly* limited in at least two areas, she also is presumptively disabled.

For purposes of evaluating under steps two and three the severity of Kimberly's depression and generalized anxiety disorder, the ALJ decided she had moderate limitations in two areas—(1) concentrating, persisting, or maintaining pace and (2) adapting and managing oneself—and thus found that the mental impairments were severe. She found that Kimberly was mildly limited in the other two areas—(1) understanding, remembering, and applying information and (2) interacting with others. The court now addresses Kimberly's contentions that the ALJ did not properly accommodate deficiencies in mental functioning and addresses first her argument that limitations on social functioning were required.

**1. The court can follow the ALJ's reasoning for a lack of limitations in the RFC for social functioning.**

Kimberly contends that because the ALJ found in assessing severity for purposes of steps two and three that she was mildly limited in interacting with others, the ALJ was required to include some form of socialization limitation in the RFC. (Dkt. 9 at p. 33). Kimberly ignores long-standing Agency regulations that an ALJ's assessment of a claimant's abilities within the four broad areas of functioning for purposes of steps two and three is *not* a determination of one's residual functional capacity in the job place. Kimberly also ignores the entirety of the ALJ's discussion about her socialization skills and does not cite any testimony or any observations or analyses by medical providers about her socialization abilities. The ALJ provided sufficient evidentiary support for a lack of socialization limitations in the workplace, including the consultative psychologist's opinion that Kimberly can relate well with fellow workers and supervisors. (R. 518, 574). The court therefore rejects Kimberly's contention that the ALJ was required to include in the RFC limitations on her social functioning.

**2. The ALJ's accounting in the RFC for Kimberly's deficits in CPP is problematic, requiring remand.**

Kimberly contends that because the ALJ found she had moderate limitations in concentrating, persisting, or maintaining pace ("CPP"), the RFC's accommodation for simple routine work with few changes (changes "no more than 15% of the workday") is not supported by substantial evidence. While most of Kimberly's argument is based on too superficial a view of the Seventh Circuit's case law in this

area, beginning with *O'Connor-Spinner v. Astrue,* 627 F.3d 614 (7th Cir. 2010), she has identified a glaring error, as discussed below.  It is sufficient to note here that Seventh Circuit decisions establish the following: (1) an ALJ's hypothetical to a vocational expert must include all limitations that the ALJ found were supported by the record, (2) when an ALJ determines that a claimant has at least moderate limitations in concentrating, persisting, or maintaining pace ("CPP"), there must be some logical tie within the decision between the claimant's particular difficulties in these areas and the way the RFC accommodates those difficulties, and (3) an ALJ cannot ignore important evidence contrary to her conclusions.  *See Lothridge v. Saul,* 984 F.3d 1227 (7th Cir. 2021).

In other words, although Seventh Circuit decisions in this area from *O'Connor-Spinner* forward brought a skeptical eye to ALJs' accommodations in an RFC for moderate difficulties with CPP, the law remains as always—whether substantial evidence exists, *i.e.,* did the ALJ in a specific case base her decision on such relevant evidence as a reasonable mind might accept as adequate to support a conclusion without ignoring a line of evidence undermining that conclusion. *Lothridge,* 984 F.3d 1227 (ALJ's determination about how moderate difficulties with CPP are accommodated in the RFC must be supported by an adequate explanation of the outcome); *see also Martin v. Saul,* 950 F.3d 369, 373 (7th Cir. 2020) (finding that ALJ appropriately tailored the claimant's CPP limitations without merely assuming that unskilled work accommodated her mental impairments).

Kimberly's argument that the ALJ's limitation to simple routine work with few changes did not properly accommodate her CPP limitations mostly lacks any acknowledgement of the ALJ's actual discussion, but she raises important holes in the ALJ's overall analysis. The ALJ stated she found Kimberly moderately limited in CPP because of her "consistent complaints of mental limitation [with respect to concentrating and completing tasks] in combination with her complaints of physical pain and distress." (R. 574). But there is no explanation about why simple and routine tasks that rarely change in the workday will allow Kimberly to concentrate and complete them despite her chronic pain, distress, and the effects of her pain medication. *See* R. 575 (ALJ acknowledged Kimberly's testimony that her pain medications cause "impaired thinking and concentration"). *See Martin,* 950 F.3d 369 (finding that the ALJ discussed each aspect of concentrating, persisting, and maintaining pace, and provided a reason the claimant could still function appropriately within the confines of the RFC). More importantly, the ALJ completely left out of the RFC and her hypothetical to the vocational expert a functional restriction she found was necessary to accommodate Kimberly's difficulties. The ALJ stated that because of Kimberly's difficulties concentrating— and apparently their effect on her ability to maintain focus and pace—she "limited [her] to performing goal-oriented work, but no constant production rate pace work." (R. 581). Those limits are not in the RFC. The VE did not consider them in giving his opinion about jobs Kimberly can perform.

Because the ALJ's RFC demonstrably does not include limitations she found were supported by the record (in addition to the weak, if not non-existent, explanation why simple routine work accommodates Kimberly's concentration problems), the ALJ's decision about jobs Kimberly can perform consistent with her CPP difficulties is not supported by substantial evidence.  Reversal and remand are required on this ground alone.

## C. The ALJ ignored contrary lines of evidence with respect to jobs Kimberly can perform.

Kimberly also argues that the jobs the ALJ found she can perform (even if the RFC had been supported by substantial evidence) are, in fact, inconsistent with her right upper extremity limitations, or at least, that the ALJ's decision that she can perform those jobs is not supported by substantial evidence.

Recall that the ALJ severely limited Kimberly's ability to use her right upper extremity.  She cannot reach overhead with her right arm, and she can "no more than occasionally" handle objects, finger, and feel with the right arm.  The VE testified, in response to the ALJ's inquiries, that a person who has these right-sided limitations but who is not limited on the left side can perform the jobs of Merchandise Marker, Cleaner/Housekeeper, Office Helper, Ticket Taker, and Rental Clerk.  (R. 625).  But the VE cast doubt on the availability of those jobs—at least their availability at the numerical levels he provided the ALJ (and on which the ALJ relied)—on questioning by Kimberly's counsel.  Her counsel inquired about a person's ability to do these jobs when one arm/hand is functional no more than occasionally and *that* arm/hand is dominant.  The VE stated that his answers to the

ALJ about jobs and availability would obviously be affected if the worker's right upper extremity is the dominant hand:  "I think it obviously makes some difference."  He further testified that although the DOT does not distinguish between unilateral and bilateral handling, one must look at the descriptions of the jobs to determine how much dexterity with one's hands is required.  (R. 628).  The VE also noted that people who lose substantial use of their dominant hand are "pretty limited."  (R. 629).

The ALJ's decision ignores this testimony.  And, importantly, there is no reference anywhere in the decision that Kimberly is right-handed. There is no discussion anywhere about whether Kimberly's very specific testimony about her difficulties in using her left hand to compensate—she's slow and not very dexterous on the left side—could possibly be compatible with working as a Merchandise Marker, Cleaner/Housekeeper, Office Helper, Ticket Taker, or Rental Clerk.  The ALJ did not discuss the descriptions of these jobs in the DOT or make any qualitative evaluation about whether Kimberly's lack of dexterity even on the left side combined with her severe limitations on her dominant right side is consistent with them.  As Kimberly shows, the DOT's descriptions for these jobs suggest that one with severe limits on dominant hand use would have difficulties performing the job's requirements:  four of these jobs require *frequent* handling, the remaining one (Rental Clerk) requires a pencil/pen or computer and likely is not so routine that there are barely any changes in the work day, and one of Kimberly's arms/hands cannot perform frequent handling tasks.  At the least the adequacy of Kimberly's

ability to do work at pace and with persistence when her dominant hand cannot perform the job requirements is called seriously into question; even the ALJ noted that Kimberly's pain levels substantially increase (and her concentration abilities diminish) the more she is required to use her right hand at all.

The Commissioner bears the burden at step five to establish the existence of jobs in significant numbers in the national economy that a claimant can perform consistent with her RFC and based on her vocational factors. The court must find that the Commissioner did not meet that burden here. In deciding that Kimberly could perform the jobs she identified, the ALJ ignored that Kimberly is right-hand dominant. The ALJ also ignored the VE's qualifications about the need to focus on specific DOT requirements to properly evaluate whether the abilities of a person whose lifting, handling, fingering, and feeling restrictions apply to her dominant arm/hand are consistent with the jobs. An ALJ must address lines of evidence that undermine the conclusions she reaches, *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012), but the ALJ chose not even to acknowledge the evidence. For these reasons, the court must reverse and remand.

## <u>Conclusion</u>

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE and REMAND under sentence four of 42 U.S.C. § 405(g) the Commissioner's decision that Kimberly was not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file

objections within 14 days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date:  February 3, 2021

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana


Distribution:

All ECF-registered counsel of record by email through the court's ECF system